IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CHARLENE BROWN                                                                                    PLAINTIFF

VS.                                                  CASE NO. 07-CV-1039

LIFE INSURANCE COMPANY
OF NORTH AMERICA                                                                              DEFENDANT

### MEMORANDUM OPINION

Plaintiff Charlene Brown filed this complaint against Defendant Life Insurance Company of North America pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*.  In her complaint, Plaintiff alleges that her claim for accidental death benefits was wrongly denied by the Defendant.  The parties have filed briefs on the Administrative Record.  The matter is ready for disposition.

### BACKGROUND

Plaintiff's husband, John Calvin Brown ("Brown"), was employed by Atlantic Research Corporation ("ARC") as a Senior Technical Operator.  Through his employment, Brown was insured under Group Accident Policy OK 82 06 05 (the "Policy") which was issued to ARC by Life Insurance Company of North America ("LINA").  The policy provided in part:

We agree to pay benefits for loss from bodily injuries:

   a) caused by an accident which happens while an insured is covered by this policy; and

   b) which, directly and from no other causes, result in a covered loss.

We will not pay benefits if the loss was caused by:

      a) sickness, disease, or bodily infirmity; or

      b) any of the Exclusions listed on page 2.

The "Exclusions" section of the policy provided that "No benefits will be paid for loss resulting from ... sickness, disease or bodily infirmity....

    On June 2, 2003, while at work, Brown collapsed while mowing the grass at the ARC facilities. He was transported to the Ouachita County Medical Center where he was pronounced dead. At the time of his death, Brown weighed approximately 315 pounds. He suffered from type II diabetes, hypertension (high blood pressure) and hyperlipidemia (high cholesterol). He was taking Glucovance, Actos, Lipitor and Hyzaar for these medical conditions. Brown had no history of a heart condition. However, medical tests performed in April and May 2003, indicated that Brown had a mild enlargement of his heart and depressed pulmonary flow rates suggesting a possible early stage mild obstructive deficiency. On the day of his death, Brown's wife, Charlene Brown, reported to the ER staff that Brown had experienced arm pain all day the day before and had not seen a doctor.

    In the ER records, Dr. Tabe, the ER doctor, wrote that Brown died of asystole secondary to lethal arrhythmia. The death certificate, signed by Dr. Rollin Wycoff, listed the immediate cause of death as type II diabetes mellitus with hypertension as a significant contributing condition. The death certificate also had several boxes that could be checked off under the heading "manner of death," including "Natural," "Accident," and "Could not be Determined." "Natural" was the only box checked by Dr. Wycoff. The death certificate indicated that no autopsy was performed on Brown.

    On August 22, 2003, ARC submitted a claim for accidental death benefits to LINA on behalf

of the Plaintiff, Charlene Brown.  On the claim form, ARC stated that Brown had suffered a heart attack while cutting grass at the ARC facilities.  On September 16, 2003, after reviewing the benefits claim form, the death certificate and the medical records from the Ouachita County Medical Center, LINA denied Plaintiff's benefits claim.  LINA based its denial on the ground that Brown's death was not solely the result of an accidental injury.  Rather, LINA stated that Brown died from natural causes, i.e., cardiac arrest.  LINA informed Plaintiff that she could appeal its denial of benefits and could submit additional information for the company's review.

On September 23, 2003, Plaintiff appealed LINA's denial of benefits stating that Brown's cardiac arrest was caused by his mowing the grass on a hot, humid afternoon.[1]  Plaintiff claimed that mowing the grass in the heat was not one of Brown's normal job duties and as a result of this unusual exertion he suffered a heart attack.  Plaintiff informed LINA that she had retained a doctor to review the records in the case and would be submitting the doctor's report for LINA's review.  On May 27, 2004, after receiving no additional information from the Plaintiff, LINA again denied Plaintiff's claim for benefits.

On July 25, 2005, Plaintiff sent a letter to LINA requesting that her claim for accidental death benefits be reopened.  As part of this request, Plaintiff submitted a letter prepared by Dr. W. A. Daniel.[2]  In this letter, Dr. Daniel stated that it was his opinion that Brown's death was caused by an accident while mowing the grass at ARC.  Dr. Daniel also testified before the Arkansas Worker's Compensation Commission on Plaintiff's behalf.  During his testimony before the Commission, Dr.

---

[1] The evidence before the Court indicates that on the day in question, the outside temperature was approximately 85 degrees with 65% humidity.

[2] Dr. Daniel is a practicing physician in Camden, Arkansas.  He is Board Certified in Internal Medicine.

3

Daniel admitted that Brown's diabetes, high cholesterol, hypertension and obesity made him far more predisposed to having a heart attack than an individual without these pre-existing conditions. Thereafter, LINA reopened Plaintiff's benefits claim for additional review. On August 31, 2005, Plaintiff submitted to LINA the opinion of the Workers' Compensation Commission stating that "an accident was the major cause of the claimant's death."

In light of the additional information submitted by the Plaintiff, LINA determined that an independent medical opinion was needed before it could render its claim decision. Thereafter, LINA submitted Plaintiff's claim, along with the medical information and documentation, to Dr. Stuart Snyder[3] for independent review and an opinion as to whether Brown's death was the direct result of an accident and from no other causes. In a letter dated October 8, 2005, Dr. Snyder stated that it was his opinion that Brown died of a sudden heart attack brought about by his obesity, hypertension, hyperlipidemia and diabetes, not by an accident.

On October 13, 2005, LINA again denied Plaintiff's claim for accidental death benefits on the ground that Brown's death was not the result of an accidental injury but rather was caused by an illness or a disease. On May 8, 2007, Plaintiff filed this ERISA action against LINA for wrongfully denying her claim for accidental death benefits under Group Accident Policy OK 82 06 05. The parties have filed briefs on the Administrative Record. The matter is now ready for disposition.

## STANDARD OF REVIEW

ERISA provides that a plan participant may bring a civil action to "recover benefits due him under the term of the plan" and "to enforce his rights under the term of the plan." 29 U.S.C. §

---

[3] Dr. Snyder is an Intracorp Physician Advisor in Philadelphia, Pennsylvania. He is Board Certified in Cardiovascular Disease and Internal Medicine.

1132(a)(1)(B). However, ERISA does not specify what standard of review the courts are to apply in such an action. The Supreme Court in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) held that a reviewing court should conduct a *de novo* review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the term of the plan." *Id.* at 115. If a plan gives the administrator such discretionary authority, the Court reviews the administrator's decision under a deferential abuse of discretion standard. *Janssen v. Minneapolis Auto Dealers Ben. Fund,* 477 F.3d 1109, 1113 (8th Cir. 2006).

Here, the Plaintiff argues that Group Accident Policy OK 82 06 05 does not grant the plan administrator discretionary authority to interpret the terms of the plan. Therefore, LINA's decision to deny accidental death benefits under the policy is entitled to *de novo* review by the Court. LINA agrees. The Court will conduct a *de novo* review in this case.

DISCUSSION

When conducting a *de novo* review in an ERISA case, the courts apply the federal common law developed under ERISA to construe disputed terms in a plan. *King v. Hartford Life and Acc. Ins. Co.,* 414 F.3d 994, 998 (8th Cir. 2005). Under such federal common law, policy terms should be accorded their "ordinary meaning as a reasonable person in the position of the [plan] participate, not the actual participate, would have understood the words to mean." *Adams v. Continental Cas. Co.,* 364 F.3d 952, 954 (8th Cir. 2004) (citing *Hughes v. 3M Retiree Med. Plan,* 281 F.3d 786, 789-790 (8th Cir. 2002)).

In this case, the accident policy states that benefits will be paid for "injuries caused by an accident ... , which, directly and from no other causes, result in a covered loss." Thus, the Court

must first determine if this limiting language within the policy is ambiguous. The federal circuits have adopted two differing approaches in making this determination.

The Sixth and the Tenth Circuits have taken a narrow approach and held that similar limiting language in an ERISA policy is unambiguous.[4] *See Criss v. Hartford Accident & Indem. Co.,* 963 F.2d 373 (6th Cir. 1992); *Pirkheim v. First Unum Life Ins.,* 229 F.3d 1008 (10th Cir. 2000). Under this approach, coverage is precluded unless the beneficiary can show 1) that the loss results directly from an accidental bodily injury, and 2) the loss results independently of all other causes. *Id.* at 1010-11. The Fourth and Eleventh Circuits, concerned with such a strict interpretation, have adopted a "middle ground" approach under which recovery is barred if a pre-existing condition substantially contributed to the loss. *See Adkins v. Reliance Standard Life Ins. Co. of N. Am.,* 917 F.2d 794 (4th Cir. 1990); *Dixon v. Life Ins. Co. of No. Am.,* 389 F.3d 1179 (11th Cir. 2004). The Ninth Circuit also uses the "middle ground" approach but gives effect to the restrictive policy language only if it is conspicuous. *See McClure v. Life Ins. Co. of No. Am.,* 84 F.3d 1129 (9th Cir. 1996).

Because the Eighth Circuit has yet to rule on this issue, the Court is unclear on which federal common law approach will be followed in this Circuit. However, under either approach, Brown's death is not a covered loss under the policy.

Under the narrow approach followed by the Sixth and Tenth Circuits, the accident policy's limiting language is unambiguous. No coverage exists unless the loss results "directly" from an accident and "from no other causes." Thus, to recover under the policy Plaintiff must show 1) that Brown's death resulted directly from an accident and 2) from no other causes. Under the second

---

[4] The limiting language at issue in these cases was "directly and independently of all other causes."

6

condition, recovery is precluded if Brown's death was even partially due to some other causes.

The evidence in this case shows that at the time of his death, Brown suffered from obesity, type II diabetes, hypertension (high blood pressure) and hyperlipidemia (high cholesterol). He had a mild enlargement of his heart and depressed pulmonary flow rates suggesting a possible early stage mild obstructive deficiency. On the day before his death, Brown experienced arm pain all day and did not see a doctor. Brown's death certificate stated that diabetes mellitus and hypertension were the causes of death. And, the medical evidence in the case indicated one or more of Brown's pre-existing medical conditions as significantly contributing to his death. There is no evidence that these pre-existing medical conditions did not at least partially cause Brown's fatal heart attack.

Under the "middle ground" approach followed by the Fourth, Ninth and Eleventh Circuits, recovery is barred if a pre-existing condition substantially contributed to the injury. Here, the evidence is clear that at the time of his death, Brown suffered from obesity, diabetes, hypertension, high cholesterol, an enlarged heart and early signs of chronic obstructive pulmonary disease. There is also evidence that these pre-existing conditions, at a minimum, substantially contributed to Brown's fatal heart attack.

In reviewing the evidence, it is apparent that Brown's obesity, diabetes, hypertension and high cholesterol partially caused or substantially contributed to his fatal heart attack. Thus, under both the narrow approach followed in the Sixth and Tenth Circuits and the "middle ground" approach followed in the Fourth, Ninth and Eleventh Circuits, Brown's death is not a covered loss under the accident policy at issue in this case.

## CONCLUSION

After conducting a *de novo* review, the Court finds that the death of Plaintiff's husband, John

Calvin Brown, did not result "directly" from an accident and from "no other causes" as required by the accident policy in this case. Plaintiff is therefore not entitled to benefits under LINA's Group Accident Policy OK 82 06 05. Accordingly, a judgment will be entered in this matter in favor of Life Insurance Company of North America, dismissing Plaintiff's claim with prejudice.

      IT IS SO ORDERED, this 28th day of July, 2009.

                                              /s/Harry F. Barnes
                                              Hon. Harry F. Barnes
                                              United States District Judge